Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| CASE NUMBER | 99 C 7457; 01 C 1312-13; 01C1315-16 | DATE | 11/30/2001 |
| CASE TITLE | Block vs. Abbott Laboratories, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Motion for Protective Order [#85] is hereby granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 7 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | DEC 03 2001 date docketed | |
| | Notified counsel by telephone. | | 109 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 11/30/2001 date mailed notice | |
| FT/sey | courtroom deputy's initials | Date/time received in central Clerk's Office | FT mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TOBY BLOCK, Individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiffs, ) | No. 99 C 7457, |
| ) | 01 C 1312, 01 C 1313 |
| ) | 01 C 1315, 01 C 1316 |
| v. ) | |
| ) | Judge Wayne R. |
| ) | Andersen |
| ABBOTT LABORATORIES, INC. ) | |
| ) | Magistrate Judge |
| ) | Arlander Keys |
| Defendant. ) | |

**DOCKETED**
**DEC 0 3 2001**

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant's Motion for a Protective Order barring the redeposition of five Abbott Laboratories, Inc. ("Abbott") employees. In an Agreed Discovery Plan entered by this Court on April 23, 2001, the parties agreed that depositions taken in a related case would be treated as having been taken in these consolidated cases, and that Plaintiffs would not seek duplicative deposition testimony from Abbott's employees. For the reasons set forth below, Defendant's Motion is Granted.

### BACKGROUND

Plaintiffs filed suit against Abbott, claiming that Abbott's beta-hCG assay falsely indicated that they had cancer.[1]

---

[1] The parties in *Block v. Abbott, Goldman v. Abbott, Gibbs v. Abbott, Hoffman v. Abbott,* and *Glazer v. Abbott,* agreed to

Allegedly, a positive result on Abbott's beta-hCG assay indicated either pregnancy or the presence of cancer. In this case, although Plaintiffs' beta-hCG assays came back positive, they were neither pregnant nor stricken with cancer. Nevertheless, once it became apparent that they were not pregnant, Plaintiffs and their physicians presumed that Plaintiffs had cancer. Plaintiffs submitted to drastic medical treatments, including radiation, chemotherapy and hysterectomies, to combat a disease they allegedly never had, based upon their beta-hCG results.

One of the first lawsuits arising from the beta-hCG assay was a products liability action filed by Jennifer and David Rufer in Washington State Court. *Rufer v. Abbott Labs., Inc.*, No. 99-2-27090-8SEA (Wash. Sup. Ct. 1999). The Rufers obtained a judgment against Abbott on June 29, 2001. Prior to judgment in the *Rufer* case, the parties in these consolidated cases agreed that the depositions of Abbott employees taken in *Rufer* would be treated as having been taken in these consolidated cases. To avoid duplicative deposition testimony, the Court entered the Order approving this Agreed Discovery Plan on April 23, 2001.[2] *Block v. Abbott Labs., Inc.*, 99 C 7457 (April 23, 2001).

---

consolidate their cases for purposes of discovery. The Court will refer to these cases as the consolidated cases.

[2]Notably, the plaintiff's attorney in the *Rufer* case, Mr. Joel Cunningham, is also one of the Plaintiffs' attorneys in the consolidated cases before this Court.

2

Pursuant to the terms of the Agreed Order, Plaintiffs notified Abbott that it sought to redepose several Abbott employees, claiming that the questioning and testimony would not be duplicative and that the depositions were, therefore, permissible. Abbott objects with regard to three of those employees, contending that the depositions would be duplicative, and that Plaintiffs are simply seeking permission to conduct a fishing expedition into a sensitive and irrelevant area; specifically, Abbott objects to further discovery regarding a Consent Decree entered into between Abbott and the Food and Drug Administration ("FDA").

In 1998, the FDA issued Abbott a warning letter with regard to several products that were not in compliance with FDA regulations. The beta-hCG test was not among the products covered by the warning letter. On November 4, 1999, Abbott agreed to take certain remedial measures and to pay $100 million for failing to comply with FDA regulations. The Consent Decree differentiated between the products that the FDA allowed to continue in distribution and those that it did not. The FDA permitted Abbott to continue distributing the beta-hCG test.

Because the parties have been unable to resolve this dispute with regard to the three Abbott employees, Abbott filed the present Motion for a Protective Order.

**DISCUSSION**

Abbott objects to Plaintiffs request to redepose Mr. Miles White, Dr. John Bodner, and Dr. Donald Sellers.[3] The Court will discuss each of these Abbott employees in turn.

**A. Redeposition of Abbott CEO Miles White.**

Plaintiffs may not redepose Mr. White absent a showing that: 1) it is not duplicative under this Court's April 23rd Order; 2) Mr. White possesses relevant and otherwise unavailable information; and 3) Plaintiffs have exhausted less burdensome avenues for obtaining the desired information. *See Thomas v. IBM*, 48 F.3d 478, 482-84 (10th Cir. 1995) (noting that plaintiffs must satisfy these standards in seeking to depose high ranking corporate officials, who likely have very little personal knowledge of the issues at stake.)

In this case, Plaintiffs have failed to make such a showing. First, it is clear that Plaintiffs seek to question Mr. White, at least in part, about topics covered in his first deposition - such as the November 1999 e-mail. It was this e-mail that prompted Judge Downing in the King County Superior Court in Washington to permit Plaintiffs to depose Mr. White in the first

---

[3] Although Abbott initially objected to Plaintiffs' request to redepose Ms. Marcia Thomas and Mr. Matthew Klamrzynski, it has withdrawn its objection to their depositions. Therefore, the Court will not discuss these depositions here.

4

place. Obviously, redeposing Mr. White regarding this matter would fly directly in the face of the Agreed Discovery Plan, which seeks to avoid duplicative testimony.

Next, Plaintiffs have failed to demonstrate that Mr. White possesses relevant and otherwise unavailable information in this case. To the contrary, Mr. White testified conclusively that he did not have knowledge regarding the details of the drafting of the November 1999 e-mail, and that he did not have personal, first-hand knowledge of many of the issues raised in this case.

In addition, to the extent Plaintiffs seek to question Mr. White about the Consent Decree, the Court finds that such discovery would be irrelevant. Federal Rule of Civil Procedure 26(b)(2) permits discovery into non-privileged matters relevant to the parties' claims or defenses. Information is relevant under Rule 26 if it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A court may limit even relevant discovery if: 1) it is cumulative; 2) it is obtainable from a less burdensome, less expensive, and more convenient means; or 3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

In the instant case, the Court finds that Plaintiffs have not demonstrated that discovery relating to the Consent Decree is "reasonably calculated to lead to the discovery of admissible

evidence." The Court concludes, after reviewing the FDA's warning letter, the Consent Decree, and the related deposition testimony, that the Consent Decree is not relevant to Plaintiffs' claims. Notably, the *Rufer* court reached the same conclusion, ruling that evidence of the Consent Decree would not be admissible at trial. *Rufer v. Abbott Labs, Inc.*, No. 99-2-27090-8 SEA (April 19, 2001).

The Consent Decree did not identify the beta-hCG assay as one of the Abbott products of concern. And while the Consent Decree focused upon manufacturing deficiencies, Plaintiffs, conversely, allege that their lawsuits are based upon design defects and a failure to warn. Although Plaintiffs insist that the Consent Decree is significantly broader, covering a variety of issues in addition to manufacturing concerns, the FDA itself labeled its investigation into Abbott as stemming from its concern regarding Abbott's manufacturing practices. See, Pls. Ex. 1, Carol Lewis, *Manufacturing Misdeeds Cost Abbott Record-Breaking Payment*, FDA Consumer Magazine (May-June 2000). Plaintiffs have failed to demonstrate how Abbott's manufacturing practices are relevant to their case.

The Court will not permit Plaintiffs to engage in a fishing expedition into an area that Plaintiffs can not show is related to the present suit.

Finally, there is no evidence that Plaintiffs have exhausted less burdensome avenues for obtaining the desired information. Mr. White has already submitted to four hours of deposition questioning. Plaintiffs have failed to identify to the Court relevant information that Mr. White has - and that other employees do not possess - that Plaintiffs have not already discovered. Absent such a showing, the Court finds that permitting Mr. White's redeposition is contrary to well-reasoned caselaw and the terms of the Agreed Discovery Plan.

### B. Redeposition of Dr. John Bodner

Dr. Bodner is a manager of research and development at Abbott's Diagnostic Division and supervised the design of Abbott's beta-hCG assay. Dr. Bodner was Abbott's main witness at trial. Plaintiffs seek to redepose Dr. Bodner regarding 1)"the last minute defense concocted by [Abbott's] trial team that goat serum was intentionally added to undiluted samples to prevent false positive results;" 2) "thirty or forty 'red books' that were stacked in the courtroom;" 3) prior testing of false positive results during the development of the assay; and 4) Exhibit 168 - a research and development protocol that was used in the design of the beta-hCG assay.

Dr. Bodner was deposed regarding each of these matters in the *Rufer* case. The Court finds that a redeposition would be

7

duplicative. First, far from being a "last minute defense", Dr. Bodner testified at length regarding goat serum in the beta-hCG assay. Dr. Bodner explained that goat serum was added to the b-hCG assays "as a blocking mechanism," that "our assay made use of a goat to generate the antibody . . . to inhibit [a binding] reaction," Dep. at 47-49, and that "the addition of a normal goat serum . . . eliminated the [false positive] problem." *Id.* at 160. Dr. Bodner also explained how the goat serum would reduce interference to prevent false positives. *Id.* at 49-52.

Next, Dr. Bodner gave extensive deposition testimony regarding the "redbooks," explaining how and why they were created, and describing that a redbook "lists the experiments that were done. Its basically a running record of the laboratory." Dep. at 151-54.

With regard to Exhibit 168, this Exhibit was identified during Dr. Bodner's deposition and he testified extensively about it. Finally, Dr. Bodner testified at length about the steps taken to reduce the beta-hCG assays' false positives, even conceding that Abbott was never able to identify what caused the false positives. Dep. at 156-59.

In conclusion, Plaintiffs' assertion that Dr. Bodner had not previously testified about the identified matters is contradicted by a review of Dr. Bodner's deposition testimony. And although Plaintiffs assert that they wish to question Dr. Bodner further

about these topics, they have not revealed what additional questions they wish to pose to Dr. Bodner, or explained why exploring these areas again would not result in duplicative testimony, in contravention of the Agreed Discovery Plan. Therefore, the Court grants Abbott's Motion with respect to Dr. Bodner.

### C. Redeposition of Dr. Donald Sellers.

Dr. Sellers is the former project manager for the development of Abbott's Azsym beta-hCG assay. Plaintiffs request that they be permitted to redepose Dr. Sellers unless "Abbott is willing to stipulate that Dr. Sellers will not testify differently in any respect from his deposition." The Court will not permit Plaintiffs to redepose Dr. Sellers to ensure that he will not distance himself from his prior testimony. If Dr. Sellers attempts to offer testimony at trial that contradicts his deposition testimony, Plaintiffs are free to impeach Dr. Sellers. Because Plaintiffs have not offered any other basis for redeposing Dr. Sellers, Abbott's Motion is granted.

## CONCLUSION

The Agreed Discovery Plan prohibits Plaintffs from soliciting duplicative deposition testimony from Abbott's employees. Because Plaintiffs have not demonstrated that permitting the redepositions of these three employees would not be duplicative or is "reasonably calculated to lead to the discovery of admissible evidence," the redepositions will not be allowed.

**IT IS THEREFORE ORDERED** that Defendant's Motion for a Protective Order be, and the same hereby is, GRANTED.

DATED: November 30, 2001     ENTER:

ARLANDER KEYS
United States Magistrate Judge

10